**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA

      v.

                                    CASE NO. 6:17-cr-00018-ORL-40KRS

NOOR ZAHI SALMAN,

      Defendant.

**DEFENDANT'S MOTION TO PRECLUDE IMPROPER**
**ARGUMENT IN GOVERNMENT'S OPENING STATEMENT**[1]

COMES NOW the Defendant, Noor Salman, by and through undersigned counsel, and asks this Court to preclude the Government from improper argument in opening statement regarding: (1) Omar Mateen's targeting the Pulse nightclub as an intended attack on the gay community; (2) Mateen's purchases of items without Salman's presence or prior knowledge; (3) Salman's presence during Mateen's purchase of the .38 caliber pistol ammunition from Wal-Mart on May 31, 2016; (4) Mateen's designation of Ms. Salman as a beneficiary for Mateen's PNC Bank Account on June 1, 2016.

**Factual Background**

**I.     Facts related to Mateen's attack on the Pulse nightclub as an intended attack on the gay community**

During the suppression hearing, FBI Agent Christopher Mayo testified that statements Ms. Salman made raised his suspicions that she had foreknowledge of the attack.  Specifically,

---

[1] Although the motion *in limine* deadline has passed, the defense files this Motion to Preclude Improper Argument based on the Government's recently filed trial briefs, which have now brought the need for this Motion to light.

1

Salman allegedly said that Mateen liked gay people before being informed that Mateen had attacked a gay nightclub.

Based on this and other statements perceived to be inconsistent with her denial of fore-knowledge of the attack, the FBI decided to continue her questioning with FBI Special Agent Richardo Enriquez, a trained polygrapher. During her questioning by SA Enriquez, Ms. Salman signed a written statement prepared by Agent Enriquez at 4:43 pm. The written statement included the language: "When I went to Orlando with Omar last week we drove around the Pulse Night Club after we ate at the Arabic Restaurant. We drove around the Pulse Night Club for about 20 minutes with the windows of the car down. Omar was driving slowly, looking around and at one point stated 'how upset are people going to be when it gets attacked!'" In the margin, in Ms. Salman's handwriting, is written: "I knew he was talking about himself doing the attack on the Pulse." The written statement also included the words: "On Friday, June 10, 2016, late night, Omar was looking at a website for the Pulse Night Club and when I saw what he was looking at, he said, 'this is my target.'" Finally, the statement included the language: "I knew when he left the house he was going to Orlando to Attack the Pulse Night Club."

Despite these statements, the Government did not include scouting the Pulse as one of the acts in furtherance of the alleged conspiracy it identifies in its trial brief. There is good reason for this: the defense proffers that the location data from Salman and Mateen's phones, receipts, and video footage preclude the possibility that either Mateen or Salman scouted the

Pulse nightclub on June 8, 2016, when Salman and Mateen traveled to Orlando. In fact, location data does not place either of them in the vicinity of the Pulse nightclub at any time before Mateen traveled there, alone, in the early morning hours of June 12, 2016.

There is no serious disagreement on this point. The Government's expert report, prepared by Richard Fennern, does not conclude that Salman was in the vicinity of the Pulse nightclub on June 8, 2016, or at any other time.

Defense expert Richard Connor, based on the forensic data from Mateen and Salman's phones, has formed the opinion that Salman was not physically in the vicinity of the Pulse and, thus, would not have been able to observe Mateen's scouting the Pulse nightclub. Mr. Connor also formed the opinion that Mateen's cell phone did not show him in the vicinity of the Pulse nightclub prior to the early morning hours of June 12, 2016. Likewise, the FBI investigation was unable to find any reliable evidence that Mateen had been in the vicinity of the Pulse nightclub prior to the attach on June 12, 2016.

Richard Connor identified only two approximately one-hour time periods on June 8, 2016, when Mateen and Salman were in the Orlando area, for which there was any gap in the GPS data: between 6:44 pm and 7:48 pm and between 10:09 pm and 11:22 pm. These gaps, however, are filled by other evidence. Forensic data from Mateen's phone shows that at 6:44 pm on June 8, Mateen and Salman were at the intersection of Sand Lake Road and South Orange Blossom Trail, in the vicinity of the Florida Mall. Video evidence establishes that Mateen and Salman were shopping at the Victoria's Secret in the Florida Mall at 7:20 pm that night. It would have been impossible, even with no traffic, for Mateen and Salman to travel to Pulse (which is 6.6 miles away from the Florida Mall) and back to Victoria's Secret in this

time span.[2] Similarly, a receipt from Falafel King shows that Omar Mateen paid for the family's meal at 10:29 pm that night, after which video footage shows that he visited a nearby mosque at 11:16 pm. It would have been impossible, even with no traffic, for Mateen and Salman to travel to the Pulse nightclub and back to the mosque (a distance of 20.4 miles each way) in this time span. Cell tower data from Mateen and Salman's phones shows that they immediately returned home after leaving the mosque. In short, the expected forensic evidence contradicts Salman's alleged statement that Mateen scouted the Pulse while she was present.

Likewise, there is no evidence that Omar Mateen accessed the Pulse nightclub website late on the night of June 10, 2016, or at any other time. No IP addresses associated with Salman and Mateen's home Wi-Fi router accessed the Pulse nightclub website's server on the night of June 10, 2016, or the early morning of June 11, 2016. There is no evidence that any of Mateen or Salman's devices ever accessed the Pulse nightclub website's server.

This is not in serious contention. The Government's expert reports fails to find any evidence, on any of Mateen or Salman's devices, indicating that the devices had accessed the Pulse nightclub website. The Government's expert report, however, leaves open the possibility that the website could have been accessed in Google's "incognito mode," which Mateen had used in the past. A phone does not necessarily record when the phone uses incognito mode.

Defense expert Joshua Horowitz, however, will testify that "incognito" mode does not prevent a device's public IP address from pinging websites accessed by the device. Mr. Horowitz will also testify that none of the IP addresses reported by Google as being associated with

---

[2] Round trip, Google maps estimates that traveling from the Florida Mall to Pulse and back would take 40 minutes in conditions with "no traffic."

Mateen or Salman's email addresses[3] or associated with one of Mateen or Salman's devices accessed the Pulse nightclub website during the relevant time period. In short, the forensic evidence contradicts Salman's alleged statement that Mateen showed her the Pulse nightclub website and said, "This is my target."

Finally, the defense proffers that evidence concerning Mateen's actions on the evening of June 11, 2016, and early on June 12, 2016, strongly suggests that the attack on Pulse was not a result of a prior plan to attack a gay nightclub. On the evening of June 11, 2016, Mateen left his home around 5:00 pm. Credit card records and forensic evidence from Mateen's phone show that Mateen purchased food in southern Orlando, between 7:27 pm and 7:51 pm on June 11. Cell tower data and security footage show that Mateen went to Disney Springs around 10:00 pm that night. Security camera footage and police records establish there were several uniformed police officers at Disney Springs when Mateen arrived. While at Disney Springs, at 10:27 pm, Mateen searched Google for "disney springs." At 11:05 pm, Mateen searched Google for "disney world." Cell tower data shows that Mateen was in the vicinity of Epcot, one of the Disney World parks, at 12:22 am on June 12, 2016.

At 12:22:11 am on June 12, 2016, Mateen searched "downtown orlando nightclubs." This search produced Google results showing both EVE Orlando and the Pulse nightclub. At 12:22:42 am, Mateen got directions from Google Maps to EVE Orlando. EVE Orlando does not specifically cater to the LGBT community. At 12:30 am, Mateen got on I-4, heading north,

---

[3] Both Salman and Mateen maintained Google email addresses. Google records IP addresses for each device that accesses Google email accounts. The forensic data shows that Salman and Mateen frequently signed in to their email accounts, thereby providing the IP addresses used by their phones.

toward EVE Orlando. Forensic data from Mateen's phone shows that Mateen arrived in the vicinity of EVE Orlando at 12:55 am.  By 1:01 am, though, Mateen drove away from EVE Orlando.[4]

Around 1:01 am on June 12, Mateen apparently re-ran the search for "downtown orlando nightclubs" and obtained directions to the Pulse nightclub. He turned and started driving southward toward south of downtown Orlando (SODO). Between 1:12 am and 1:16 am, Mateen passed the Pulse nightclub for the first time. After this, he drove around the SODO area. At 1:33 am, he searched once again for "downtown orlando nightclubs" and obtained Google Maps directions to go back to EVE. He was in the immediate vicinity of Pulse when he made this search. At 1:34 am, Mateen began to drive away from Pulse and back toward EVE. At 1:35 am, however, he abandoned going toward EVE, turned around, and started heading back in the direction of Pulse. At 1:37 am, he was back at the Pulse nightclub. From this point, Mateen does not appear to leave the vicinity of the Pulse nightclub.  Finally, around 2:00 am, Mateen fired the first shots in the Pulse nightclub.

## II.     Facts relating to spending.

### A.      Facts related to Mateen's transactions outside the presence of Salman.

The Government, in its trial brief on aiding and abetting, states that, as an act in furtherance of Mateen's material support, "the defendant and Mateen purchased . . . $1,800 for an AR-15 assault rifle [sic], $550 for a Glock firearm [sic], magazines, and ammunition." Doc. 208 at 10.

---

[4] The defense will introduce evidence that EVE Orlando has substantial door security, and that attendees are subject to a body search before entering. There is also a substantial Orlando police presence outside of EVE Orlando. In short, it would have been a difficult target.

The Government's statement mischaracterizes these expenditures. Video footage and forensic evidence from Mateen and Salman's phones establish that Salman was not present when Mateen made the following purchases:

- On June 3, 2016, Mateen purchased 100 rounds of .38 SPC ammunition for the revolver G4S Security issued to him for his job as an armed security officer for $42.00 plus tax from the St. Lucie Shooting Center using a Wells Fargo American Express card in his name.

- On June 4, 2016, Mateen purchased a $1,837 Sig Sauer assault rifle; 1,000 rounds of 223 ammunition for the Sig Sauer for $351.45; three Sig Sauer magazines for $40.47; 100 rounds of .38 SPC ammunition for the G4S revolver for $42.00 plus tax; and one box of 40 caliber ammunition from the St. Lucie Shooting Center/St. Lucie Gun Sales using Florida Community Bank Visa and Capitol One Mastercard cards in his name.

- On June 5, 2016, Mateen purchased a $549.99 Glock G17 9MM from the St. Lucie Shooting Center/St. Lucie Gun Sales using the Florida Community Bank Visa card in his name.

- On June 9, 2016, Mateen purchased nine boxes of 9 mm ammunition for $136 plus tax; 1,000 rounds of 223/5.56 ammunition for the Sig Sauer for $450 plus tax; and three Glock magazines for $94.86, from the St. Lucie Shooting Center/St. Lucie Gun Sales using Wells Fargo American Express and Florida Community Bank Visa cards in his name.

- On June 9, 2016, Mateen purchased a cap; a knife; an additional TAPCO Intrafuse 30 Round Gen II magazine, presumably compatible with the Sig Sauer rifle; two revolver speedloaders; and a pen light for a total of $348.00 from the Port St. Lucie, Florida, Bass Pro Shop using a Capitol One Mastercard card in his name.

In the statements attributed to Salman, she allegedly admitted to learning that Mateen had purchased the rifle and $80 of ammunition for his .38 revolver. But the statement does not mention that he purchased the Glock pistol, or any ammunition or magazines for the Glock, or the rifle.

**B.      Evidence of alleged acts in furtherance before June 4, 2016.**

**1.      Wal-Mart**

On May 31, 2016, Salman drove Mateen to Wal-Mart, where Salman selected a Paw Patrol children's toy with her son. Mateen selected 200 rounds of .38 ammunition for the G4S-issued revolver.[5] Mateen purchased the toy and the ammunition for $102.84, using a PNC Points Visa credit card which is only in his name. This transaction occurred prior to Mateen viewing the Islamic State's call for attacks during Ramadan, which he viewed on June 4, 2016.

**2.      PNC Bank**

On June 1, 2016, Mateen added Salman and their son to his PNC Bank Account as payment-on-death beneficiaries. The defense proffers that testimony will show Mateen discussed the possible options available for his account with Assistant Bank Manager Shellie Morgan, and Salman deferred to Mateen's judgment. This transaction occurred before Mateen viewed the Islamic State's call for attacks during Ramadan, which he did not view until June 4, 2016.

<strong>Arguments and Authorities</strong>

**I.      Legal authority**

"An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal." *Arizona v. Washington*, 434 U.S. 497, 512 (1978). Accordingly, it is within a district court's discretion to preclude references to potential theories of a party if that party cannot or does not intend to lay a factual predicate.

---

[5] Mateen did not use the G4S revolver in his attack on the Pulse nightclub. It was found inside his rental vehicle after the attack.

*See United States v. King*, 2006 U.S. Dist. LEXIS 87052, *39-40 (Fl. M. D. Dec. 1, 2006) (ruling that a defendant was required to lay the proper predicate for an advice-of-counsel defense before suggesting the defense in his opening statement).

## II.     Application

### A.     Argument that Mateen intended his attack on the Pulse as an attack on the gay community.

The defense respectfully requests that this Court preclude the Government from suggesting in its opening statement that Mateen intended his attack as an attack on the gay community. This suggestion would be proper only if the Government intends to establish a predicate that Mateen had a pre-existing plan to attack the Pulse nightclub or another location that serves the LGBT community. Absent this predicate, the argument is improper.

The Government's sole evidence that Mateen scouted the Pulse nightclub and visited the Pulse nightclub website derives from Salman's alleged statements. The Government is entitled to proceed on this evidence, but only if the Government intends to assert that Salman's statements regarding scouting the Pulse and showing the Pulse nightclub website are accurate. The Government's assertions in its trial brief regarding aiding and abetting—that Salman "participated with Mateen in casing possible locations for an attack, including City Place and Disney Springs"—cast doubts on whether the Government intends to maintain at trial that Salman's statements to the FBI regarding the Pulse nightclub were accurate. Doc. 208 at 6. The Government's omission of an allegation Mateen and Salman scouted the Pulse nightclub is likely attributable to the contradictory forensic evidence.

While the Government is permitted to pursue alternative theories of liability and alternative interpretations of facts, the Government is not permitted to put forward in its opening

9

statement a theory that it does not intend to support with evidence. The veracity of Salman's statements is the predicate for arguing that the attack on the Pulse nightclub constituted a premeditated attack on the gay community, as opposed to a random target selection by Mateen. As such, the Government must assure the Court in advance that it intends to put forward facts and pursue a line of argument that Pulse was a premeditated target. In the absence of such assurance, references to an attack on the gay community have no foundation in the expected evidence and are therefore improper in the Government's opening statement.

**B.        Arguments that Mateen's transactions constituted acts in furtherance.**

**1.        Weapons and ammunition purchased while Salman was not present.**

The defense respectfully requests that this Court preclude the Government from suggesting in opening argument that the purchases Mateen made when Salman was not present constituted acts in furtherance of the offense.

Mateen purchased the Glock pistol, the Sig Sauer rifle, and all of the ammunition for these weapons with his own credit cards, while Salman was not present. He also purchased items ultimately used for the attack from the Port St. Lucie, Florida, Bass Pro Shop on June 9, 2016, while Salman was not present. Under an aiding and abetting theory, unlike a conspiracy, a defendant is not liable for acts in furtherance of the offense that she did not commit herself. *Compare United States v. Thomas*, 8 F.3d 1552, 1560 n.21 (11th Cir. 1993) ("[A]n individual conspirator need not participate in the overt act in furtherance of the conspiracy") *with United States v. Williams*, 865 F.3d 1328, 1347 (11th Cir. 2017) ("'To prove guilt under a theory of aiding and abetting, the Government must prove . . . the defendant committed an act which

contributed to and furthered the offense"). The Government has not charged Ms. Salman with conspiracy.

The only evidence linking Salman to the purchase of the rifle are her alleged statements to the FBI that she learned of the purchase after Mateen made it. There is no evidence that Salman had any knowledge of Mateen's purchase of the Glock pistol, or ammunition for the rifle or Glock, at the shooting center. Likewise, there is no evidence that Salman had any knowledge of Mateen's purchases at Bass Pro Shop in Port St. Lucie on June 9, 2016. Without either presence or prior knowledge of these purchases, the purchases cannot be said to be joint acts by Salman and Mateen in furtherance of an offense. While Florida law makes Salman jointly liable for the debts incurred by Mateen, the fact that she would be equally responsible for paying the credit card bills does not convert Mateen's purchases into acts in furtherance by Salman. Actions in furtherance must be attributable to the accused, or encouraged or counseled by the accused. *Rosemond v. United States*, 134 S. Ct. 1240, 1247 (2014).

Accordingly, the defense respectfully requests that this Court preclude the Government from suggesting in its opening argument that Mateen's purchases of the Glock, the Sig Sauer, the ammunition for these weapons, or the items purchased at the Port St. Lucie Bass Pro Shop, are attributable to Salman or constitute evidence of aiding and abetting on her part.

### 2.    Transactions before June 4, 2016.

The defense further requests that this Court preclude the Government from suggesting in its opening statement that actions before June 4, 2016, could aid and abet Mateen's provision or attempted provision of material support to ISIL.

11

The Government alleges that Salman aided and abetted Mateen's provision of material support, in the form of services and personnel, to ISIL. To show that Mateen provided services and personnel to ISIL, the Government must show that he intended to place himself under ISIL's direction and control. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 23-24 (2010). It appears the Government intends to establish this by showing that Mateen watched a video of Abu Bakr al-Baghdadi, an ISIL leader, calling for attacks during Ramadan.

While al-Baghdadi released the statement calling for attacks on May 21, 2016, the forensic data from Mateen's devices shows that he first viewed the video of al-Baghdadi on June 4, 2016. Before June 4, 2016, there is no evidence that Mateen was aware of ISIL's call for attacks. In absence of such evidence, Mateen's requisite intent to provide services and personnel to ISIL cannot be established as formulated before June 4, 2016. If Mateen did not formulate the intent to provide material support to ISIL, Salman likewise could not have known that he intended to provide assistance under ISIL's direction and control before June 4, 2016. Aiding and abetting requires that the accused have specific, advance knowledge of the crime contemplated by the principal. *Rosemond*, 134 S. Ct. at 1248-49.

In this case, Mateen purchased ammunition for his G4S-issued weapon at Wal-Mart, with Salman present, on May 31, 2016. He added Salman as a payable-on-death beneficiary on June 1, 2016. Both of these dates predate when Mateen learned of al-Baghdadi's directions to carry out attacks during Ramadan. As such, Mateen had not formed the prerequisite intent to materially support ISIL by committing an attack during Ramadan. Salman, therefore, could not have had knowledge of the offense at this point. Without that knowledge, Salman's pres-

12

ence or even participation in these transactions by Mateen could not constitute aiding and abetting the attack. Accordingly, the defense respectfully requests that this Court preclude the Government from suggesting in its opening statement that making Salman a payable-on-death beneficiary or Salman's driving Mateen to Wal-Mart constitute evidence of aiding and abetting.

/s/ Charles D. Swift
Charles D. Swift, Pro Hac Attorney for Noor Salman
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75074
cswift@clcma.org
(972) 914-2507

/s/ Linda Moreno
Linda Moreno, Esq.
Linda Moreno P.A.
511 Avenue of the Americas
No. 312
New York, New York 10011
Phone: (813) 247-4500
Fax: (855) 725-7454
lindamoreno.esquire@gmail.com

**CERTIFICATE OF SERVICE**

On March 5, 2018, I electronically filed the forgoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

/s/ Charles D. Swift
Charles D. Swift, Pro Hac Attorney for Noor Salman
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75074
cswift@clcma.org
(972) 914-2507